**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
                                                         :
In re:                                                   :     Appeal from:
                                                         :     Chapter 11 Case No. 05-17923 (ASH)
DELTA AIR LINES, INC., et al.,                           :
                                                         :
          Debtors.                                       :
                                                         :
-------------------------------------------------------- x
                                                         :
DFO PARTNERSHIP,                                         :     Case No. 07-CV-11437 (RMB)
                                                         :     (ECF Case)
                              Appellant,                 :
                                                         :
v.                                                       :
                                                         :
DELTA AIR LINES, INC., and                               :
THE POST-EFFECTIVE DATE                                  :
COMMITTEE OF DELTA AIR                                   :
LINES, INC.,                                             :
                                                         :
                              Appellees.                 :
-------------------------------------------------------- x

### BRIEF ON APPEAL OF SLV CLAIMANTS WILMINGTON TRUST COMPANY, AS OWNER TRUSTEE, AND CARGILL FINANCIAL SERVICES INTERNATIONAL, INC. IN RESPONSE TO APPELLANT'S OPENING BRIEF

Mark M. Elliott (ME-0840)
Michael J. Reilly (MR-6994)
Joshua Dorchak (JD-1874)
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York  10022
(212) 705-7000

Counsel to Wilmington Trust Company, as Owner Trustee,
and Cargill Financial Services International, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

COUNTERSTATEMENT OF ISSUES PRESENTED ...................................................... 2

STATEMENT OF THE CASE ................................................................................................ 2

STATEMENT OF FACTS ........................................................................................................ 4

    The Leveraged Lease Transactions ................................................................................. 4

    The IT's Collateral ............................................................................................................. 4

    The IT's Control of Remedies ......................................................................................... 5

    Priority of SLV Claims Over TIA Claims ..................................................................... 6

    The SLV Claims .................................................................................................................. 7

ARGUMENT ............................................................................................................................... 8

I.    THE BANKRUPTCY COURT CORRECTLY HELD THAT THE TIA CLAIMS
        ARE EXPRESSLY BARRED BY THE TIAS .................................................................. 8

    A.    The Bankruptcy Court Correctly Held that Because an Event Occurred
           Whereby Delta Was Required to Pay SLV, the TIAs Bar Any TIA Claim ........... 8

    B.    Delta Is Paying SLV ......................................................................................... 10

        1.    The SLV Claims Are in Fact Claims for SLV in Accordance with
              the Leases. ....................................................................................... 10

        2.    By Allowing, Distributing on, and Fully Discharging the SLV
              Claim, Delta Pays SLV. ..................................................................... 14

II.    THE ORDERS MUST BE AFFIRMED WITH RESPECT TO THE SLV
        CLAIMS ................................................................................................................ 18

CONCLUSION ........................................................................................................................... 18

i

## TABLE OF AUTHORITIES

### CASES

*425 Fifth Ave. Realty Assocs. v. Yeshiva Univ.*, 643 N.Y.S.2d 542
    (1st Dep't 1996) ...........................................................................................10, 15

*In re Delta Air Lines, Inc.*, 381 B.R. 57 (Bankr. S.D.N.Y. 2008) ........................... *passim*

*In re Keck, Mahin & Cate*, 241 B.R. 583 (Bankr. N.D. Ill. 1999)..............................16, 17

*In re Northwest Airlines Corp.*, Case No. 05-17930 (ALG)
    (Bankr. S.D.N.Y. July 27, 2007)......................................................................4, 15, 17

*Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 20 (2000))................................................18

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,*
    -- U.S. --, 127 S. Ct. 1199 (2007) ......................................................................17, 18

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.,*
    482 N.Y.S.2d 465 (N.Y. 1984) .....................................................................................12

*V.C. Vitanza Sons, Inc. v. N.Y. City Hous. Auth.*, 776 N.Y.S.2d 472
    (1st Dep't 2004) ............................................................................................................10

### STATUTES

11 U.S.C. § 524(a) ....................................................................................................16, 18

11 U.S.C. § 1123(a)(5)(J) .........................................................................................16, 18

11 U.S.C. § 1141(d) ..................................................................................................16, 18

### OTHER

Ian Shrank & Arnold G. Gough, Jr., eds., Equipment Leasing - Leveraged
    Leasing (4th ed., Supp. Feb. 2007) .................................................................... *passim*

ii

Wilmington Trust Company, not in its individual capacity, but solely as Owner Trustee (in such capacity, "Wilmington") and Cargill Financial Services International, Inc. ("Cargill") (Wilmington and Cargill together, the "SLV Claimants") respectfully submit this brief in response to the Appellant's Opening Brief on Appeal ("Appellant's Brief") filed by Appellant DFO Partnership ("DFO") in support of its appeal (the "Appeal") from the Bankruptcy Court's Order with Respect to TIA/SLV Objection 1, dated September 20, 2007 (the "Initial Order") [D-3], and Order Denying Motion for Reconsideration of Order with Respect to TIA/SLV Objection 1, dated November 15, 2007 (the "Reconsideration Order") [D-4] (together, the "Orders").[1]

## PRELIMINARY STATEMENT

The SLV Claimants hold claims (the "SLV Claims") for stipulated loss value ("SLV") under the leases (the "Leases") for four of the eight aircraft at issue in the Appeal (N914DL, N915DL, N916DL, N958DL) (the "Aircraft").  In the Orders, the Bankruptcy Court overruled Delta Air Lines, Inc.'s ("Delta's") objection to the SLV Claims.  DFO does not seek in the Appeal to disturb the Orders with respect to the SLV Claims; nor did Delta appeal or cross-appeal from the Orders with respect to the SLV Claims.

The SLV Claimants respectfully submit this limited response to DFO's Appellant's Brief to set forth certain facts pertinent to the rights of the SLV Claimants and to address certain key issues in the Appeal.  Specifically:

A.   The Bankruptcy Court correctly held that DFO's claims (the "TIA Claims") are barred by the plain terms of the applicable tax indemnity agreements (the "TIAs"), because an "event" occurred whereby Delta was required to pay SLV under the Leases.

---

[1]   "D-__" and "CD-__" refer to items in DFO's Designation of Record on Appeal and Delta's Counter-Designation, respectively.

      B.     Contrary to DFO's contentions:

          1.     The SLV Claims are in fact claims for "SLV," as that term is used in the Leases; and

          2.     Delta "pays" SLV by discharging the SLV Claims through the allowance and distribution process set forth in Delta's confirmed reorganization plan.

For these reasons, the Orders should be affirmed in all respects.

The SLV Claimants reserve their right to respond further in the event any party to the Appeal seeks to disturb the Bankruptcy Court's rulings with respect to the SLV Claims.

## COUNTERSTATEMENT OF ISSUES PRESENTED

Whether the Bankruptcy Court correctly held that the TIA Claims are barred based on the plain terms of the TIA Exclusion Provisions.

## STATEMENT OF THE CASE

To date, four "TIA/SLV Objections" have been decided in Delta's chapter 11 proceedings. Although the language of the key provision of the TIAs at issue differs to some degree as among the four TIA/SLV Objections, Delta makes the same essential assertion: that there is an "overlap" between the TIA claims and SLV claims concerning certain aircraft, to the extent that a portion of each SLV claim may have been intended, like the corresponding TIA, to compensate the Owner Participant ("OP") for the recapture of certain tax benefits. In each of the TIA/SLV Objections, Delta requests, based on an alleged general principle of law and/or based on the terms of the applicable contracts, that the TIA claims be disallowed or, in the alternative, that the SLV Claims be reduced to the extent of the "overlap." For each of the TIA/SLV Objections, the Bankruptcy Court (Hardin, B.J.), based on the plain terms of the TIAs, (a) sustained the objection as to the TIA claims, and disallowed and expunged them, and (b) overruled the objection as to the SLV claims.

The Appeal concerns TIA/SLV Objection 1, which after two hearings was decided in Judge Hardin's Decision on TIA/SLV Objections 1 and 2 (the "Decision").  D-2; *see* D-26, D-28.  After motions for reconsideration were filed and heard, Judge Hardin entered the Initial Order.  D-3; *see* D-31, D-38.  After DFO's second motion for reconsideration was filed and heard, Judge Hardin entered the Reconsideration Order.  D-4; *see* D-46.  The Orders incorporate Judge Hardin's findings and holdings in the Decision and in the hearings.

In the Decision, Judge Hardin held with respect to TIA/SLV Objection 1 that:

- Delta's "cosmic argument" -- namely, that the TIA Claims and the SLV Claims reflect a single claim for a single loss and so cannot both be allowed to the extent they "overlap," irrespective of the parties' contracts -- is "factually and legally wrong," D-2 at 6-8;

- an unambiguous exclusion provision in the TIAs expressly bars the TIA Claims, because an "event" undisputedly occurred "whereby Delta "is required to pay" SLV under the Leases, D-2 at 8-10, 12; and

- the only contractual provision that potentially might call for a reduction of SLV "is not relevant in this case" because the condition of prior payment by Delta to the OP indisputably was not met, D-2 at 11.

Upon reconsideration of TIA/SLV Objections 1 and 2, Judge Hardin further explained his reasoning, reaffirmed his holdings, and rejected certain further arguments made by DFO.  Judge Hardin further held, among other things, that:

- the calculation underlying the SLV Claims "fundamentally provides for the payment of [SLV] with the offsets that are not materially different from the offsets that are provided under every provision [of the section of the Leases governing the Lessor's remedies], *see, e.g.,* D-38 (8/20/08 Hr'g Tr.) at 64; and

- Delta pays SLV by discharging the SLV Claims through allowance and distribution pursuant to Delta's reorganization plan, *see, e.g.,* D-2 at 14; CD-3 (7/10/07 Hr'g Tr.) at 11-15; D-38 (8/20/07 Hr'g Tr.) at 64.

TIA/SLV Objection 2 was decided in the Decision, based in part on similar reasoning to that applicable to TIA/SLV Objection 1.  D-2 at 12-15; *see* CD-2, CD-3, D-3.  Judge Hardin's Decision on TIA/SLV Objections 3 and 5, issued on January 16, 2008, cross-references and

further elucidates the Decision and subsequent rulings on TIA/SLV Objection 1.  *See In re Delta Air Lines, Inc.,* 381 B.R. 57 (Bankr. S.D.N.Y. 2008) (the "January Decision").

In the interim between the Decision and the January Decision, the Decision was cited with approval by Judge Gropper of the Bankruptcy Court in the Northwest Airlines chapter 11 proceedings, in a decision approving settlement of certain SLV claims in full based in part on a TIA exclusion provision like those at issue in the TIA/SLV Objections.  *See* Transcript of Court Decision on Motion to Approve Stipulation Regarding "GFCC Aircraft Claims," at 13-14, *In re Northwest Airlines Corp.,* Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. July 27, 2007) (the "Northwest Decision") (unpublished; attached as Appendix 1 hereto).

DFO appealed the Orders with respect to TIA/SLV Objection 1, as it concerns the TIA Claims.  Delta did not appeal or cross-appeal the Orders with respect to TIA/SLV Objection 1.

## STATEMENT OF FACTS

**The Leveraged Lease Transactions**

The Decision provides a summary of the leveraged lease transactions at issue in the Appeal.  D-2 at 3-4.  The SLV Claimants note here only those aspects of the transactions that are of particular importance with respect to the Appeal and the SLV Claims.[2]

**The IT's Collateral**

As is common in leveraged lease transactions, the Owner Trustee ("OT") granted the Indenture Trustee ("IT") a security interest in and lien upon certain assets (the "Collateral") under the Trust Indenture and Security Agreement (the "Indenture"), to secure the principal, interest, premiums and related fees and charges (collectively the "Debt") owed by the OT to the IT for the benefit of the Lenders.  *See generally* 1 Equipment Leasing - Leveraged Leasing, Ian

---

[2]    The Lease, Indenture, TIA, and Participation Agreement (the "Operative Documents") cited herein concern N914DL.  The Operative Documents concerning N915DL, N916DL and N958DL are substantially the same.

Shrank & Arnold G. Gough, Jr., eds. (4th ed., Supp. Feb. 2007) ("Shrank") at § 8:5.2 at 8-30. The Collateral includes, among other things, the Aircraft and the "Lease and all Rent thereunder, including, without limitation, all amounts of Basic Rent and Supplemental Rent, and payments of any kind thereunder." D-22, Ex. C (Indenture) at 3-4 (Granting Clause), Art. 1 at 10 ("Indenture Estate"). Supplemental Rent expressly includes SLV. D-22, Ex. A (Lease) § 1 at 11.

Thus, the Indenture expressly provides that SLV is pledged to the IT in its entirety, without exception, as part of the Collateral, until such time as the Debt is paid in full. D-22, Ex. C (Indenture) at 3-4 (Granting Clause § 2), Art. 1 at 8-9 (SLV is not among "Excepted Payments" excluded from Collateral). By contrast, the Lessee's separate indemnification of the OP's tax losses under the TIA is excluded from the Collateral. D-22, Ex. C (Indenture), Art. 1 at 8-9 ("Excepted Payments"); *see* 1 Shrank § 8:5.2 at 8-30.

SLV is a form of liquidated damages, which is pre-calculated (as a percentage of the cost of the Aircraft) for every month throughout the term of the Leases, as set forth in Exhibit B to the Leases. D-22, Ex. A (Lease), Ex. B. The Leases require the Lessee to pay SLV in certain defined circumstances, such as an Event of Default or the destruction of the Aircraft. Importantly, however, in every instance where the Leases require payment of "SLV," SLV is subject to certain reductions or offsets (e.g., for the sale value of the aircraft) designed to ensure that SLV does not exceed the Lessor's actual loss. *See, e.g.,* D-22, Ex. A (Lease) § 15(e) at 56-57.

**The IT's Control of Remedies**

Delta's bankruptcy filing and discontinuance of rent payments as scheduled constituted "Events of Default" under the Lease, D-22, Ex. A (Lease) §§ 14(a), 14(f) at 51-53, and under the Indenture, D-22, Ex. C (Indenture) § 7.01(a) at 42.

Where there is an Event of Default under the Lease and the Indenture, the IT has the right to control the exercise of remedies under the Lease and the order in which those remedies are exercised, to the exclusion of the OT.  D-22, Ex. C (Indenture) §§ 7.02 at 45-47, 7.05 at 53; *see* 1 Shrank § 8:6.7 at 8-49; *see also* D-22, Ex. A (Lease) § 15 at 54-57 (Remedies).  For example, the IT may demand outstanding rent plus SLV, and upon payment of SLV may proceed to sell the Aircraft and pay over the proceeds to Delta.  D-22, Ex. A (Lease) § 15(e) at 56-57. Moreover, where there is an Event of Default under the Indenture, the IT has the right to exercise the remedies of a secured party against the OT, including without limitation the right to foreclose on the lien against the Collateral and repossess the Aircraft.  D-22, Ex. C (Indenture) § 7.03 at 47-51; *see* 1 Shrank § 8:7.1 at 8-51.

Where there is an Event of Default under the Lease and the Indenture, any payments -- including SLV -- received from the Lessee by the IT must be distributed by the IT pursuant to a strict system of priority (the "Waterfall").  D-22, Ex. C (Indenture) § 5.03 at 36-37; *see* 1 Shrank § 8:7.1 at 8-51.  First, the proceeds are applied to the IT's costs.  D-22, Ex. C (Indenture) § 5.03 at 36-37.  Second, the proceeds are applied to the Debt, until all principal, interest, and premiums are "pa[id] in full."  *Id.*  Third -- and only if the Debt is first paid in full -- "the balance, if any, of such payments . . ." is distributed to the OT for the benefit of the OP.  *Id.*  Thus, where the Lessee makes a payment of SLV in an amount less than or equal to the Debt, the OT is entitled by contract to nothing.  *See id.*  Conversely, where the Lessee makes a payment of SLV in an amount greater than the Debt, the excess is forwarded to the OT for the benefit of the OP.  *See id.*

**Priority of SLV Claims Over TIA Claims**

In contrast to an SLV claim, a TIA claim does not arise immediately upon an Event of Default under the Lease.  D-22, Ex. A (Lease) § 14 at 51-54; *cf.* D-22, Ex. D (TIA) § 6(a) at 8-

10.  Rather, the TIA claim arises when the OP incurs a recapture of tax benefits, which occurs only after the IT forecloses upon the aircraft, which in turn necessarily occurs after an Event of Default under the Leases.  Thus, in a lease default scenario, a TIA claim can never accrue before an SLV claim.

**The SLV Claims**

The SLV Claims currently held by Wilmington were evidenced by a proof of claim (no. 5335) filed by the IT based on a certain Court-approved Term Sheet and a Letter Agreement, both entered into by Delta and the IT (the original holder of these SLV Claims).  D-20, ¶ 4, Ex. A (Term Sheet) at 2-3, Ex. B (Letter Agreement).  These SLV Claims were calculated in a manner so as to most accurately approximate the actual loss, as follows:  SLV, *plus* outstanding rent, *less* a credit for the present value of future rent payments and the residual value of the Aircraft at the expiration of the Lease.  D-20, ¶ 4, Ex. A at 2-3; *id.* ¶ 6, Ex. C (deficiency claims calculations for the Aircraft).  After a third party purchased DFO's OP interests in connection with N914DL, N915DL and N916DL and paid in full the Debt owed by the OT to the Lenders, the IT's lien upon the Collateral was released and clear title to the SLV Claims reverted to Wilmington, as OT.  D-20, ¶¶ 9-10, 12.

The SLV Claim currently held by Cargill was evidenced by a proof of claim (no. 5330) filed for SLV by the IT.  Subsequently, the IT foreclosed on the Collateral, including Aircraft N958DL, and transferred this SLV Claim to a successor OT, which later transferred this SLV Claim to Cargill.  Delta and Cargill have agreed upon the amount of Cargill's SLV Claim, pursuant to the same formula as was used in the Term Sheet described above.

Delta has allowed that portion of each of the SLV Claims that indisputably is not subject to any alleged overlap with a TIA Claim concerning the same Aircraft.  As a result of the

Decision and the Orders, which were not appealed with respect to the SLV Claims, the SLV Claims should now be allowed in full.

## ARGUMENT

Each of the relevant TIAs expressly and unambiguously denies DFO a TIA Claim as a result of an "event whereby [Delta] is required to pay SLV." The Bankruptcy Court correctly found that "[t]here can be no dispute that such a[n] 'event' has happened" under sections 14 and 15 of the Leases, and so correctly held that the TIA Claims should be expunged. D-2 at 10.

Indeed, DFO does not deny that such an event occurred. Given that, the TIA Claims are completely disallowed by virtue of their exclusion provision, regardless of how or even whether Delta actually pays SLV. If this Court sees fit to reach the issue of actual payment of SLV, Delta is in fact paying SLV, because (i) the SLV Claims are in fact claims for SLV in accordance with the Leases, and (ii) Delta fully discharges its obligation to pay SLV by allowing and distributing on the SLV Claims. The Decision is entirely consistent with the unambiguous contracts, the facts, and the applicable law. Accordingly, the Orders should be affirmed in all respects.

## I.    THE BANKRUPTCY COURT CORRECTLY HELD THAT THE TIA CLAIMS ARE EXPRESSLY BARRED BY THE TIAS.

The Bankruptcy Court correctly enforced the plain meaning of the TIA and correctly held that "under Section 7(c) of the TIA [DFO] is barred from asserting a TIA claim against Delta." D-2 at 10.

### A.    The Bankruptcy Court Correctly Held that Because an Event Occurred Whereby Delta Was Required to Pay SLV, the TIAs Bar Any TIA Claim.

The TIA Exclusion Provision expressly provides:

> Notwithstanding any provision to the contrary contained in Section 6 hereof, the Owner Participant shall **not** be entitled to any payment . . . in respect of any Loss or any Foreign Tax Credit Loss arising as a result of one or more of the following **events**:

*\*\**

> (c) **any event whereby a party to any of the Operative Documents is required to pay [SLV]** . . . .

D-22, Ex. D (TIA) § 7 at 13-14 (emphasis added) (the "TIA Exclusion Provision").[3]  Thus, by the plain terms of the TIA, if an event occurs whereby Delta is contractually required to pay SLV, any TIA claim is excluded.

As the Bankruptcy Court correctly noted -- and DFO admits this -- Delta's bankruptcy filing and failure to pay rent constituted events of default under the Leases.  *See* D-2 at 8-9; D-22, Ex. A (Lease) §§ 14(a), 14(f) at 51-53; Appellant's Br. at 13-14.  As the Bankruptcy Court also correctly noted -- and DFO does not deny this -- these events of default (and the corresponding Indenture default) entitled the IT to demand SLV under section 15 of the Lease. D-2 at 9; *see, e.g.,* D-22, Ex. A (Lease) § 15(e) at 56-57.[4]  The IT did in fact demand SLV by filing the proofs of claim that underlie the SLV Claims.  D-2 at 9; D-20, Ex. D.  Thus, the Bankruptcy Court correctly held that "[t]here can be no dispute that an 'event' has happened" such that Delta "is required to pay" SLV, pursuant to the TIA Exclusion Provision.  D-2 at 10.

DFO argues that Delta is not actually paying SLV to the SLV Claimants.  That argument is academic, because the TIA Exclusion Provision is <u>not</u> triggered by actual payment of SLV, but rather by the occurrence of an event that <u>requires</u> SLV to be paid -- which event undisputedly occurred.  Under well settled New York law, the Bankruptcy Court could neither read <u>out of</u> the TIA Exclusion Provision the full meaning and effect of the "… event whereby [Delta] is required to pay …" language, nor read <u>into</u> the same provision a requirement that SLV actually be paid.

---

[3]    The provision contains an exception, "except to the extent that the calculation of [SLV] does not accurately reflect the timing of the loss of any tax benefit reflected in the calculation of [SLV]," but neither DFO nor any party in interest has argued that this exception applies to the SLV-Based Claim asserted herein.

[4]    It is also undisputed that Delta's bankruptcy filing also constituted an Event of Default under the Indenture.  *See* D-22, Ex. C (Indenture) § 7.01(a) at 42.

*See, e.g., V.C. Vitanza Sons, Inc. v. N.Y. City Hous. Auth.,* 776 N.Y.S.2d 472, 472-73 (1st Dep't 2004) (court should give all provisions their "full meaning and effect"); *425 Fifth Ave. Realty Assocs. v. Yeshiva Univ.,* 643 N.Y.S.2d 542, 543 (1st Dep't 1996) (court should not interpret contracts "as impliedly stating something which the parties have neglected to specifically include").

In sum, an Event of Default under the Lease automatically triggers two directly related consequences: Delta's obligation to pay SLV and Delta's exemption from TIA liability. The TIA Exclusion Clause does not speak to how or even whether Delta <u>satisfies</u> its obligation to pay SLV. However, if this Court should find relevant the issue of Delta's actual payment of SLV, the TIA Claims are nevertheless excluded by the SLV Claims, for the reasons that follow.

**B.**    <u>**Delta Is Paying SLV.**</u>

DFO raises two arguments against the application of the TIA Exclusion Provision: (1) Delta is not really paying SLV because the SLV Claims as calculated include certain offsets, even though such offsets are provided for in the Leases; and (2) Delta purportedly will not "pay" SLV, even though Delta is allowing and distributing on the SLV Claims, thereby fully discharging those claims. These arguments contradict the Operative Documents and applicable law.

**1.**    **The SLV Claims Are in Fact Claims for SLV in Accordance with the Leases.**

DFO attempts to elude the TIA Exclusion Provision by arguing that Delta is not in fact paying SLV because Delta is paying something other than the SLV amount calculated simply with reference to Exhibit B to the Leases. In fact, however, the Leases expressly mandate that SLV is to be reduced by offsets. This of course must be the case. SLV is a form of liquidated damages designed to fully compensate the Lessor for a breach of the Lease. In the event the

Lessor recoups value from the Aircraft, in the form of, e.g., the Aircraft's fair market value or sale value, or insurance proceeds in the event of an accident, these recoupments must be taken into account in calculating the amount of SLV to which the Lessor is entitled. Therefore, Judge Hardin correctly rejected DFO's argument, reasoning that "the concept of stipulated loss value is to make the indenture trustee for the lenders whole with regard to the amount of the loan, basically, and that requires a netting of the calculation that's called for against the sale value or fair market value of the aircraft." D-38 (8/20/07 Hr'g Tr.) at 60.

In fact, every single clause of the Leases that requires payment of SLV contemplates a payment of SLV that accounts for offsets, as follows:

- § 10(c)(i) at 42-43:  SLV, *less* payments from governmental authorities;

- § 11(a) at 47-48:  SLV, *less* insurance proceeds;

- § 15(c) at 55:  SLV, *plus* back rent, *less* fair market value of Aircraft;

- § 15(d) at 56:  SLV, *plus* back rent, *less* sale value of Aircraft; and

- § 15(e) at 56-57:  SLV, with *refund* of proceeds of sale of Aircraft.

D-22, Ex. A (Lease); *see* D-38 (8/20/08 Hr'g Tr.) at 64; *see also* 381 B.R. at 73-75 (Jan. Decision).[5]

Because the Leases invariably provide that SLV is to be paid net of offsets, any argument that Delta's payment of a net SLV amount does not satisfy the TIA Exclusion Provision would render that provision "a meaningless sham," because on this theory, Delta would <u>never</u> be "required to pay SLV."  381 B.R. at 74 (Jan. Decision); *see* D-46 (11/6/07 Hr'g Tr.) at 66-67.  In so holding, Judge Hardin followed black letter New York law that requires contract terms to be

---

[5]    As Judge Hardin further noted in the January Decision, the very definition of SLV in the leases contemplates that the SLV number provided in the exhibit to the leases will be "increased or reduced in accordance with the terms of Section 3(c) [of the lease] . . . ."  381 B.R. at 74-75; *see* D-22, Ex. A (Lease) § 1 at 11.

interpreted "so as to give full effect to all provisions of the agreement." *See id.* (citing *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.,* 482 N.Y.S.2d 465, 468 (N.Y. 1984)).[6]

DFO also argues that the SLV Claims are not really claims for SLV because the SLV Claims include an offset for the fair market value of the Aircraft ("FMV"). Citing section 15(c) of the Leases, DFO admits that a credit for FMV is required, but argues that here, under section 5(a)(iii) of the Leases, that credit should be deemed to be zero, because the Lessor did not physically repossess the Aircraft. DFO is wrong for several reasons.

First, DFO's focus on section 15(c) reflects its erroneous contention that sections 15(c) through 15(e) -- and only one of them, at that -- are the Lessor's exclusive remedy under the Leases. Yet, section 15(f) provides that the Lessor may "exercise any other right or remedy which may be available under applicable law . . . ." D-22, Ex. A (Lease) § 15(f) at 57. The last paragraph of section 15 reaffirms this and provides that the Lessor's remedies are not limited to one particular subsection of section 15:

> Except as otherwise expressly provided above, no remedy referred to in this Section 15 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity; and the exercise or beginning of exercise by Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by Lessor of any or all such other remedies.

D-22, Ex. A (Lease) § 15 at 57.

Accordingly, the IT had authority under the above cited provisions to select from among the remedies listed in sections 15(a) through 15(f) or such other and analogous remedies as are available at law. In exercising its Lease remedies, the Lessor had every right to enter into

---

[6]  DFO argues that in sections 15(c) and 15(d) of the Leases, paying "SLV" must mean paying SLV without offsets because Delta pays the Lessor SLV <u>net</u> of offsets, but also must pay the Lessor interest (so DFO believes) based on SLV without any offsets. This argument is utterly illogical.

restructured leases with Delta, demand SLV pursuant to one or more subsections of section 15, and to provide for an SLV calculation consistent with the formulas set forth in section 15. Indeed, the foregoing was approved by the Bankruptcy Court, by an order that was not appealed. *See* D-20, Ex. A (Term Sheet).

Judge Hardin correctly held that the Term Sheet "fundamentally provides for the payment of [SLV] with the offsets that are not materially different from the offsets that are provided under every provision, every subdivision . . . of Section 15 of the lease, that provides for [SLV] under those circumstances, and I believe that [the TIA Exclusion Provision] here is applicable."  D-38 (8/20/07 Hr'g Tr.) at 64; *see* 381 B.R. at 71-72 (Jan. Decision) ("There is no dispute that the indenture trustees' claims are based upon the entirety of SLV as calculated under the Lease (net of payment credits under the [Term Sheet] which are entirely consistent with Section 15 of the Lease) . . . .").

Second, DFO's interpretation of 5(a)(iii) and 15(c) is incorrect.  The purpose of section 5(a)(iii) is plainly to protect the Lessor.  *See* D-22, Ex. A (Lease) § 5(a)(iii) at 17-18.  If the value of the Aircraft to the Lessor is zero, FMV is zero.  Thus, FMV is only zero in the unique situation where the Lessor demands possession of the Aircraft but is unable to "obtain" such possession, because in that scenario the Lessor would be unable to recover any value from the Aircraft.  It is uncontested that nothing of the kind occurred here.  Under the arrangement reflected in the Term Sheet and as approved by Judge Hardin, the Lessor indisputably will recoup value -- indeed, fair market value -- from the Aircraft, in the form of future rent payments and the residual value of the Aircraft upon the termination of the restructured leases.  *See* D-20, Ex. A (Term Sheet) at 2-3 and Ex. C (representative SLV Claim calculation).  DFO does not and cannot argue that the fair market value of the Aircraft to the SLV Claimants was actually zero.

DFO's argument also flies in the face of common business sense. The IT, exercising its rights as lienholder on the Lessor's interest in the Lease, made the business decision to re-lease the Aircraft to Delta without physically repossessing them -- with the goal of maximizing the return on the IT's interest in the Aircraft (in the form of future rent) and avoiding repossession, which could have disrupted Delta's service to its customers, seriously harmed Delta and jeopardized the IT's recovery. The implication of DFO's argument is that an offset for FMV would only be warranted if the SLV Claimants instead took the purposeless and harmful step of physically repossessing the Aircraft before re-leasing them.

And, of course, the IT never contended that FMV should be zero, even though that contention would have benefited the IT. Neither the IT nor its SLV Claimant successors ever took such a position, because it would have been absurd to claim in the circumstances that they were not in fact recouping FMV from these Aircraft. In light of the Lease terms and common sense, the IT also did not contest that such FMV should be figured into the calculation of SLV.

Judge Hardin correctly held that the SLV Claims are claims for "SLV," as that term is used in the Leases. D-38 (8/20/07 Hr'g Tr.) at 58-59, 64; *see* D-46 (11/6/07 Hr'g Tr.) at 66-67.

## 2.    By Allowing, Distributing on, and Fully Discharging the SLV Claim, Delta Pays SLV.

DFO also argues that the TIA Exclusion Provision does not apply because Delta will not "pay" SLV in cash and in full. Judge Hardin correctly rejected this argument, which contradicts the contracts and the context.

The words "in cash" or "in full" do not appear in the TIA Exclusion Provision; and DFO is not permitted to add terms to the contract. *See, e.g., 425 Fifth Ave.,* 643 N.Y.S.2d at 543. Thus, the question is limited to whether Delta is "paying" the SLV Claims. Judge Hardin correctly answered that question in the affirmative, holding with respect to TIA/SLV Objection 2

that Delta's obligation to "pay" SLV "must be construed in such a manner as to comport with the meaning of payment in the context of bankruptcy." D-2 at 14. This is not, as DFO would have it, "rewriting" the TIAs: rather, this is enforcing the TIAs based on the facts -- specifically, the fact that Delta is in bankruptcy. The January Decision and Northwest Decision are based in part on the same reasoning. *See* 381 B.R. at 67-70; Northwest Decision at 13-14 (App. 1 hereto).

The Operative Documents expressly contemplate a Delta bankruptcy, and it is beyond question that the parties and their counsel were aware that an insolvent bankruptcy debtor cannot and must not pay its general unsecured claims in full.[7] Thus, as Judge Hardin reasoned in the January Decision, neither the Leases nor the TIAs can "rationally be construed as expecting the airline to make [SLV] payments in full in cash . . . ." 381 B.R. at 69; *see* D-2 (Decision) at 14-15. Accordingly, Judge Hardin correctly enforced the TIA Exclusion Provision in the only manner that is consistent with the plain meaning of the term "pay" and the parties' expectations. *See* D-2 at 14-15.[8]

As Judge Hardin explained in detail in the January Decision, quoting ten separate dictionaries, the consistent and essential meaning of the word "pay" (or "payment") is to provide something of value that is sufficient to discharge an obligation. 381 B.R. at 68-69. This definition applies both in and outside bankruptcy. While the obligation to "pay" can be discharged by giving the face amount of a debt in cash, that is not the only way to "pay" -- and "payment" cannot be effected by that means in the context of Delta's bankruptcy, where Delta is barred by the Bankruptcy Code and its Reorganization Plan from paying SLV in cash and in full.

---

[7]    The leading treatise on leveraged leases opens its chapter entitled "Equipment Leasing and the Bankruptcy Code" as follows: "Bankruptcy is the acid test for the parties' business transaction and for the lawyers' documentation of the transaction. Many negotiated agreements or carefully drafted clauses in standard form may be held temporarily in abeyance or permanently modified in a bankruptcy case." 1 Shrank § 7:1 at 7-3.

[8]    Nothing in the TIA indicates that it is a "backstop" or "safety net" in the event insufficient funds flow through the Waterfall to the OPs.

On the other hand, in the context of Delta's bankruptcy, "payment" is -- and can only be -- effected by providing value sufficient to discharge Delta's obligations through the allowance and distribution process. *See, e.g.,* 11 U.S.C. § 524(a) (injunction against pursuing claims), § 1123(a)(5)(J) (debtor may issue stock "in exchange for claims"), § 1141(d) (discharge of debts).

Based on the same reasoning, the Northern District of Illinois Bankruptcy Court has held that discharge of a claim in bankruptcy is "payment" of such claim as it may impact third parties as well as the direct obligee. *See In re Keck, Mahin & Cate,* 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999). In *Keck*, the debtor's insurer had a contractual obligation to pay claims under the policy only after the debtor "paid" its self-insured retention ("SIR") of $1 million. 241 B.R. at 595-96. Under the debtor's proposed reorganization plan, the debtor allowed the applicable creditors unsecured claims in the amount of $1 million for the SIR portion of their recovery. *Id.* at 596. Advancing an argument conceptually similar to DFO's argument in the Appeal, the debtor's insurer asserted that it should not have any obligation to pay claims, because the debtor would not actually "pay" $1 million against its SIR obligations. *Id.* The Court rejected the insurer's argument, holding that the debtor would in fact "pay" its SIR under the plan, as follows:

> The SIRs are to be satisfied in exactly the same way as every other unsecured claim against the Debtor. . . . An obligation to pay is satisfied when something of value is given and accepted in full discharge of that obligation. *See Black's Law Dictionary* 1150 (7th ed. 1999). That is what the Plan provides.

*Id.* This logic applies with equal force to Delta's payment of SLV by allowance and distribution on the SLV Claims. *See* 381 B.R. at 66 (Jan. Decision); *see also* D-2 at 11; Northwest Decision at 13-14 (Judge Gropper cites with approval Judge Hardin's holding that in the bankruptcy context "pay" means discharge of claims pursuant to a chapter 11 plan) (App. 1 hereto).

Thus, all three of the Bankruptcy Judges who have addressed this question (to the SLV Claimants' knowledge) concluded that a bankruptcy debtor's contractual obligation is "paid" with respect to the obligee and with respect to any third party whose rights or obligations are contingent upon such payment when the debtor allows and distributes on such claim and such claim is discharged under the Bankruptcy Code.

DFO is incorrect when it contends that Judge Hardin "imposed" a "special 'bankruptcy' rule of contract interpretation" upon the TIAs, purportedly contrary to the mandate of *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* -- U.S. --, 127 S. Ct. 1199, 1204-05 (2007) and other Supreme Court decisions that provide that state law generally governs contract interpretation in bankruptcy.   As shown above, Judge Hardin gave the word "pay" its well accepted meaning in or outside bankruptcy -- to give something of value that discharges one's obligations.  He therefore did not interpret the clause at issue differently than it would be interpreted outside bankruptcy.  In any event, Judge Hardin rightly gave the word "pay" its only appropriate application in bankruptcy.  This was not inconsistent with *Travelers*; rather, it was mandated by *Travelers*.  Thus, *Travelers* teaches that a creditor's contractual rights against a bankruptcy debtor are "subject to any qualifying . . . provision of the Bankruptcy Code."  127 S. Ct. at 1204-05 (quoting *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 20 (2000)).  The application of 11 U.S.C. § 524(a) (injunction against pursuing claims), § 1123(a)(5)(J) (debtor may issue stock "in exchange for claims") and § 1141(d) (discharge of debts) -- all unquestionably "provision[s] of the Bankruptcy Code" -- most certainly "qualif[ies]" a potential creditor's right, if any, to receive payment of 100 cents on the dollar in cash.  Therefore, Judge Hardin's holding is not only consistent with the well accepted definition of "pay," it is also consistent with *Travelers* and similar Supreme Court jurisprudence.

**II.**    **THE ORDERS MUST BE AFFIRMED WITH RESPECT TO THE SLV CLAIMS.**

DFO did not appeal the Orders to the extent they overrule Delta's limited objection to the SLV Claims, and DFO does not argue that the SLV Claims can or should be reduced as a result of its alleged TIA Claims.  Delta did not cross-appeal on this (or any) point with respect to TIA/SLV Objection 1.  Accordingly, the Orders must stand with respect to the SLV Claims.  In the event any party should argue in this proceeding that the SLV Claims should be reduced for any reason, the SLV Claimants reserve their right to address such arguments.

**CONCLUSION**

For the foregoing reasons, the SLV Claimants respectfully request that the Orders be affirmed in all respects as to TIA/SLV Objection 1.

Dated:  New York, New York
　　　　March 3, 2008

**BINGHAM MCCUTCHEN LLP**

By:    /s/  Mark M. Elliott
　　　　Mark M. Elliott (ME-0840)
　　　　Michael J. Reilly (MR-6994)
　　　　Joshua Dorchak (JD-1874)
　　　　399 Park Avenue
　　　　New York, New York  10022
　　　　(212) 705-7000

　　　　Counsel to the Wilmington Trust Company,
　　　　as Owner Trustee, and Cargill Financial
　　　　Services International, Inc.

# **APPENDIX 1**

1                UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK

2

3
                            .  Case No. 05-17930 (ALG)

4  IN RE:                      .
                            .  (Jointly Administered)

5  NORTHWEST AIRLINES         .
    CORPORATION, et al,       .  New York, New York

6                            .  Friday, July 27, 2007
                            .  3:31 p.m.

7                   Debtors.    .
    . . . . . . . . . . . . . . . ..

8
     TRANSCRIPT OF COURT DECISION ON MOTION TO APPROVE STIPULATION

9             REGARDING "GFCC AIRCRAFT CLAIMS"
          BEFORE THE HONORABLE ALLAN L. GROPPER

10           UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:  (Via Telephone)

12  For the Debtors:         Mark C. Ellenberg, Esq.
                         Douglas S. Mintz, Esq.

13                      CADWALADER, WICKERSHAM
                          & TAFT, LLP

14                      1201 F Street N.W.
                        Washington, D.C. 20004

15
    Counsel for General Foods

16  Corporation:            David F. Abbott, Esq.
                        Kenneth E. Noble, Esq.

17                      David S. Curry, Esq.
                      MAYER, BROWN, ROWE & MAW, LLP

18                      1675 Broadway
                      New York, New York 10019

19  (Appearances continued)

20  Audio Operator:         Electronically Recorded
                        by Michelle Brown, ECRO

21
    Transcription Company:     Rand Transcript Service, Inc.

22                      80 Broad Street, Fifth Floor
                      New York, New York 10004

23                      (212) 504-2919
                      www.randtranscript.com

24
    Proceedings recorded by electronic sound recording, transcript

25  produced by transcription service.

```
 1    APPEARANCES:

 2    For the Post-Effective Date
      Creditors' Committee:          Lorenzo Marinuzzi, Esq.
 3                                   OTTERBOURG, STEINDLER, HOUSTON
                                      & ROSEN, P.C.
 4                                   230 Park Avenue
                                     New York, New York 10169
 5
      For the U.S. Bank National
 6    Association, as Trustee:       Jeanne P. Darcey, Esq.
                                     EDWARDS, ANGELL, PALMER
 7                                    & DODGE, LLP
                                     111 Huntington Avenue
 8                                   Boston, Massachusetts 02199

 9    For BAE Systems
      Funding, Ltd.:                 Ken Coleman, Esq.
10                                   ALLEN & OVERY, LLP
                                     1221 Avenue of the Americas
11                                   New York, New York 10020

12    For Lehman Brothers:           Shalom L. Kohn, Esq.
                                     SIDLEY AUSTIN, LLP
13                                   One South Dearborn
                                     Chicago, Illinois 60603
14
      For Philip Morris
15    Capital Corporation:           Douglas B. Levene, Esq.
                                     PHILIP MORRIS CAPITAL
16                                    CORPORATION
                                     225 High Ridge Road
17                                   Stamford, Connecticut 06905

18

19

20

21

22

23

24

25
```

3

1          (Proceedings commence at 3:31 p.m.)

2          (Conference call established.)

3               THE COURT:  Good afternoon.  This is Judge Gropper.

4     Who's on the line, please?  May I have appearances?  Let's

5     start with the debtors.

6          (Operator confers.)

7               MR. MINTZ:  Doug Mintz is on from Cadwalader.

8               MR. ELLENBERG:  Your Honor, this is Mark Ellenberg for

9     Cadwalader on the line, too.

10              THE COURT:  All right.  We have the debtors.

11         GFCC?

12              MR. ABBOTT:  Good afternoon, Your Honor.  This is

13    David Abbott from Mayer, Brown, Rowe & Maw, on behalf of GFCC.

14    I have in the room with me Ken Noble, also from Mayer Brown;

15    Dave Curry I believe will be joining us on the call, and Doug

16    Levene who's in-house counsel at GFCC.

17              MR. LEVENE:  Yes, Doug Levene here.

18              THE COURT:  All right.  Good afternoon.

19              MR. ABBOTT:  Good afternoon.

20              THE COURT:  Anyone for BAE?

21              MS. INGMAN:  This is Tania Ingman for BAE.  Ken

22    Coleman is expected to join, also.

23              THE COURT:  All right.  Anyone for the indenture

24    trustee?

25              MS. DARCEY:  Yes.  Good afternoon, Your Honor.  This

4

1   is Jeanne Darcey from Edwards, Angell, Palmer & Dodge for the

2   trustee.

3          THE COURT:  All right.  Any other counsel who wish to

4   note their appearances?

5          MR. MARINUZZI:  Good afternoon, Your Honor.  Lorenzo

6   Marinuzzi, Otterbourg, Steindler, Houston & Rosen, on behalf of

7   the Post-Effective Date Committee.

8          MR. KOHN:  And Shalom Kohn, Sidley Austin, on behalf

9   of Lehman Brothers, Your Honor.

10         THE COURT:  All right.  Anyone else?

11     (No verbal response.)

12         THE COURT:  Very good.  Well, thank you for joining us

13  this afternoon.  I have written out my decision, and I'll read

14  it into the record as perhaps the fastest way to proceed

15  forward.

16         Who just joined us?

17         MR. CURRY:  David Curry, Mayer Brown.

18         THE COURT:  All right.  Very good.  I've taken

19  appearances, and I have appearances from the principal parties,

20  or from all of the parties.

21         This is a motion by the reorganized debtors for

22  approval of a stipulation that fixes the claims filed by the

23  holders of the debt on ten aircraft that the debtors leased

24  under leveraged lease transactions.  The leases were rejected,

25  and the aircraft were sold at a foreclosure sale at the behest

5

1   of the lenders, who had a security interest in the aircraft, as

2   well as the leases.  There is no dispute that the sale of the

3   aircraft, together with the proofs of claim given to the

4   lenders hereby, under the stipulation, do not pay the debt in

5   full.

6        The stipulation is supported by U.S. Bank, National

7   Association, as indenture trustee for the holders of the

8   secured debt; by BAE Systems (Funding 1 (Limited) "BAE"), a

9   lender and now the owner of the aircraft by virtue of its

10  credit bid at the foreclosure sale; and by the Post-Effective

11  Date Committee of Creditors.

12       Five of the aircraft included in the original

13  stipulation were not objected to; it was agreed at oral

14  argument that the Court would enter a separate order approving

15  the stipulations with regard to those five aircraft, and that

16  has been done today.

17       Five of the aircraft were the subject of one objection

18  filed by the equity participant in the leveraged lease

19  transactions -- in effect, the beneficial owner through a

20  trustee of the five aircraft before the foreclosure -- General

21  Foods Credit Corporation ("GFCC").  GFCC objects primarily on

22  the ground that the claims provided to the debt impair its

23  rights under a tax indemnity agreement with the debtors that is

24  the subject of its separate proofs of claim filed in these

25  Chapter 11 cases.  The tax indemnity agreement ("TIA") was the

1  same for the five aircraft, and only one such agreement will be

2  dealt with in this decision.

3      The form of aircraft leveraged lease transaction that

4  is at issue herein was described in a recent opinion of Judge

5  Hardin of this Court In Re Delta Air Lines, Inc., 05-B-17923,

6  2007 WL 1462207 (Bankr. S.D.N.Y., May 16, 2007).

7      In light of the fact that that opinion comprehensively

8  analyzes the form of transaction involved, and since all

9  parties here endorse and rely on that opinion, the Court will

10  not repeat all of the background set forth therein.  Suffice it

11  to say that there, as here, the crux of the dispute arose out

12  of the fact that the operative documents gave a claim to the

13  debt for a stipulated loss value of the aircraft under certain

14  circumstances, such as a loss of the aircraft or certain events

15  of default, and stipulated loss value contains a component

16  measured by the tax losses of the equity.  There, as here, the

17  equity owner of the aircraft had a tax indemnity agreement with

18  the lessee airline, indemnifying it for tax losses under

19  certain circumstances.

20      Judge Hardin held that, under the terms of the

21  agreements at issue in Delta, the debt held the claim for the

22  tax loss component embedded in stipulated loss value; and,

23  under the terms of the tax indemnity agreements at issue there,

24  the equity was not entitled to a claim under the tax indemnity

25  agreement.

7

In so holding, Judge Hardin rejected the debtors' argument in _Delta_ that there could not be duplicative claims for tax losses by the debt and by the equity; what he called a "cosmic argument against overlapping claims." The Court there held that the rights of the parties could only be determined by a careful examination of the agreements that they entered into.

No one in this case has relied on the so-called "cosmic argument." All agree that the dispute should be resolved by careful examination of the applicable agreements. We, accordingly, start with the same proposition that guided the _Delta_ Court: That the rights of the parties should be determined by a painstaking analysis of the agreements at issue.

We start that analysis with several uncontested points. As noted above, under certain circumstances, the lessee (the airline) may be liable for the stipulated loss value of the plane, an amount calculated by reference to the cost of the aircraft multiplied by a factor set forth on a schedule attached to the lease. There is no dispute here that stipulated loss value constitutes the basis for calculating the claims that are fixed by the stipulation, and there is no dispute that the claimants are entitled to a claim for at least a portion of the stipulated loss value of the five aircraft.

It is also uncontested that stipulated loss value ("SLV" hereafter) contains a component that includes the tax

1   losses that have been or will be suffered by the equity (GFCC)

2   as a result *inter alia* of the defaults under the lease and the

3   subsequent foreclosures.  The crux of the parties' dispute

4   relates to this component of SLV, the portion of stipulated

5   loss value represented by the tax losses, because in Judge

6   Hardin's words:

7           "A component of SLV is an amount designed to

8           compensate for the same tax consequences triggered by

9           an early termination of the leases as that covered by

10          the TIAs."

11          GFCC claims that it, rather than the debt, is entitled

12   to a claim for the tax component of SLV, based on the

13   documents, and that is the crux of its objection.  It starts

14   with the argument that the definition of "stipulated loss

15   value" in the leases, which defines SLV by reference to the

16   cost of the aircraft multiplied by a percentage listed on the

17   applicable exhibit, and then contains an adjustment providing

18   *inter alia* that SLV shall be the amount so determined:

19          "-- as may be adjusted from time to time, as provided

20          in ... Section 7 of the tax indemnity agreement."

21          Section 7 of the tax indemnity agreement -- or TIA --

22   provides for an adjustment to SLV under certain circumstances.

23   It reads as follows:

24          "If any amount is required to be paid by lessee under

25          Section 4 hereof, owner-participant will compute the

9

1           stipulated loss value percentages and termination

2           value percentages and special purchase price with

3           respect to the aircraft, to reflect such payment in

4           accordance with the manner in which such values were

5           originally computed, or adjusted pursuant to Section 3

6           of the lease, by owner-participant, and shall certify

7           to lessee either that such values as set forth in the

8           lease do not require change or, as the case may be,

9           the new values necessary to reflect the foregoing

10          recomputation, describing in reasonable detail the

11          basis for computing such new values, and upon such

12          certification, such new values shall be substituted

13          for the values appearing in the lease."

14          GFCC's argument in substance is that an amount is

15   "required to be paid" to it under the TIA, that SLV payable

16   under the leases must be adjusted, and the claim provided to

17   the debt is overstated by the unadjusted tax component thereof.

18          The debtors' principal response is that no amount in

19   respect to the tax component is required to be paid to GFCC

20   under the TIA by virtue of an exclusion therein.  That

21   exclusion appears in Section 5 of the TIA, providing that:

22          "Notwithstanding anything to the contrary in this

23          agreement, lessee shall not be required to indemnify

24          owner-participant with respect to a loss or foreign

25          tax credit loss to the extent such loss or foreign tax

1    credit loss occurs as a direct result of one or more

2    of the following events ..."

3    There follow certain events.  The debtors rely in the

4    event in Section 5(c), which is:

5    "Any event as a result of which lessee or any other

6    person has paid stipulated loss value or termination

7    value, or paid the amount required to be the greater

8    of the fair market value of the aircraft and

9    stipulated loss value or termination value in

10    accordance with the provisions of the operative

11    documents, except to the extent that such payment does

12    not reflect the timing of the occurrence for federal

13    income tax purposes;"

14    As all parties agreed at oral argument, the meaning of

15    this section is critical to the resolution of the instant

16    dispute.  GFCC also agreed that the TIA must be read as a

17    whole.  Therefore, if Section 5(c) relieves the debtor from an

18    obligation to indemnify GFCC as owner-participant, then no

19    amount is required to be paid to it in respect of the tax

20    component of the SLV in Section 7 is not applicable.

21    The debtors argue that Section 5(c) governs because

22    the "event" has taken place, as a direct result of which the

23    debtors will have paid stipulated loss value; that is, the

24    debtors' bankruptcy filing and default under the lease.

25    GFCC responds with two points:

11

1    First, GFCC points to the word "paid" in Section 5(c)

2  and contrasts it to the clause "required to be paid" in Section

3  7, and it contends while Section 5(c) requires actual payment,

4  Section 7 only mandates "required to be paid."  It argues, in

5  effect, that it is "required to be paid" under the TIA because,

6  as of today, the debt has not been "paid."

7    Notwithstanding the difference in wording, Section 5

8  generally applies "notwithstanding anything to the contrary" in

9  the TIA, indicating that Section 5 events must be considered

10  when determining the applicability of Section 7.  The operative

11  event for purposes of Section 5 and Section 5(c), the

12  bankruptcy and default, has already taken place, and SLV will

13  have been paid once the stipulation is approved and payment is

14  made on the relevant proofs of claim.

15    Moreover, the proposition that Section 7 trumps

16  Section 5(c), and that the language in Section 7, "required to

17  be paid," means that an obligation to make a Section 5(c)

18  payment could never be made without first making a required

19  payment under Section 7 stretches the language "required to be

20  paid" beyond the breaking point.  Section 7 does not, for

21  example, provide for an adjustment of SLV when an amount shall

22  first become payable or contain any similar language.  An

23  amount is not "required to be paid" for purposes of Section 7

24  if it is not payable under the TIA, read as a whole, and that

25  includes Section 5(c), which, as noted, applies

12

1   "notwithstanding anything to the contrary in the agreement."

2        Moreover, it would lead to a result that is at odds

3   with the basic structure of the transaction.  Under the

4   operative documents, stipulated loss value, including the tax

5   component, is part of a package of security assigned to the

6   indenture trustee for the benefit of the debt.  One of the

7   operative documents, the trust indenture and security

8   agreement, contains a waterfall directing payments in respect

9   of the collateral after an event of default.  As should not be

10   surprising, in light of the fact that debt usually comes before

11   equity, the waterfall contains provisions for payments to the

12   debt before payments to the equity.  Payments to the owner-

13   trustee for any tax, expenses, or other losses come forth in

14   line after payment to the debt holders to make them whole.

15   There is no dispute that the claims granted to the debt

16   pursuant to the stipulation, together with the fair market

17   value of the aircraft as per the foreclosure sale, will not

18   make the debt whole.  It cannot be assumed that an amount to be

19   paid to the debt should be reduced on account of a claim by

20   equity, and an intention to do so would have to be clearly

21   expressed in the applicable contracts.

22        GFCC responds that the security granted to the

23   indenture trustee does not include:

24        "All payments required to be made under the tax

25          indemnity agreement by lessee, and all payments of

13

1       supplemental rent by lessee in respect of any amounts

2       payable under the tax indemnity agreement."

3       See Page 6 of the trustee indenture and security

4   agreement.

5       But this exclusion is only applicable for payments

6   required to be made or amounts payable under the TIA.  As

7   stated earlier, amounts are not payable or required to be paid

8   under the TIA if they are within the exclusion in Section 5(c).

9       GFCC's further argument is that Section 5(c) does not

10  apply because, even after allowance and payment of the proofs

11  of claim, the debt will not have been "paid" SLV because it

12  will not have been paid in full, in cash.

13      Judge Hardin rejected a similar contention in

14  connection with the Delta case.  Although the documents that

15  Judge Hardin dealt with were slightly different from those

16  before this Court, his alternative holding in connection with

17  what he called the "second Delta objection" was that the word

18  "pays" does not mean "paid in cash."  The term instead, in the

19  words of the Delta Court:

20      "-- must be construed in such a manner as to comport

21      with the meaning of payment in the context of

22      bankruptcy, which the parties expressly contemplated

23      in the TIA, as well as in the other agreements.  There

24      is rarely likely to be full payment of claims in

25      bankruptcy; and, in the ordinary course of any Chapter

14

1    11 case, payment of claims under a plan may be in cash

2    or equity or debt securities of the debtor, or a

3    combination of cash and securities."

4    Judge Hardin went on to contrast the language of the

5 TIA in <u>Delta</u> to the requirement in the lease there that lease

6 payments be made in U.S. Dollars, and he noted that the TIA

7 there could have required payment in cash, but it did not.

8    The TIA here does not require payment in cash.  GFCC

9 attempts to bolster its "paid in full, in cash argument" by

10 reference to a clause in Section 5(c) of the TIA in this case

11 that provides that payment must be made "in accordance with the

12 provisions of the operative documents ..."

13    At the outset, it is not clear that this clause

14 modifies the word "paid."  There is a comma in Section 5(c)

15 setting off the words "paid stipulated loss value or

16 termination value," from the remainder of the section.  The

17 plainest reading of the section is to give effect to the comma

18 and conclude that the words "in accordance with the provisions

19 of the operative documents" do not modify the term "SLV."  See

20 generally <u>In Re Ron Pair Enterprises</u>, 489 U.S. 235, 242 (1989).

21    Beyond this, GFCC's construction misconstrues the

22 words "in accordance with the provisions of the operative

23 documents."  The term "operative documents" is defined in

24 Section 1(j) of the TIA by reference to the definition in the

25 lease, and the lease defines "operative documents" as including

15

1   at least fifteen separate documents; including the lease, the

2   TIA, and the trust indenture and security agreement.  These

3   documents relied, among many other things, for events of

4   default, foreclosure, and remedies and rights on the part of

5   the debt and the owner-participant.  The operative documents do

6   not require payment in all cases in cash, in full, and the

7   words "in accordance with the provisions of the operative

8   documents" cannot be limited to this meaning.

9         The proofs of claim that have been accorded to BAE and

10   the indenture trustee are "in accordance with the provisions of

11   the operative documents."  The Court, thus, concludes that

12   based on the plain meaning of the parties' agreements, GFCC's

13   objections to the stipulation relating to the remaining five

14   aircraft must be overruled.

15         GFCC further objects to some of the language of the

16   stipulation, and it has suggested some further language.  It

17   objects to Paragraph 2, which provides as follows:

18         "The aggregate amount of the allowed claims was

19         calculated by reference to the stipulated loss value

20         ("SLV") in accordance with each pre-petition lease.

21         Allowance of the allowed claims plus the fair market

22         value with respect to each relevant aircraft

23         constitutes full payment and discharge of stipulated

24         loss value with respect to each pre-petition lease as

25         required pursuant to the relevant pre-petition leases

16

1    and the other operative documents."

2    The Court finds that this paragraph, settling any

3    possible claims against the debtors from the debt, is

4    consistent with its ruling as set forth above, that SLV does

5    not have to be reduced by virtue of the provisions of Section 7

6    of the TIA and the applicable definition of "SLV" in the lease.

7    GFCC also seeks to add a paragraph that the

8    stipulation shall have no effect whatsoever, whether legal or

9    factual, on GFCC's claims under the TIA; and that all of GFCC's

10   rights and claims against the indenture trustee, BAE, and the

11   other parties to the operative documents and their successors

12   and assigneds are fully preserved.  This contention requires

13   consideration of the procedural posture of this matter, and

14   also of the scope of the stipulation.

15   As to the procedural posture, GFCC has filed proofs of

16   claim based on its construction of the TIA, and the debtors

17   have not yet objected to the claim, and their time to do so has

18   not yet elapsed.  It is not appropriate for the debtors to

19   contend that a decision on this motion will invalidate GFCC's

20   proofs of claim.  There may be elements to its claim that do

21   not include those tax losses that are a component of SLV, and

22   thus included in the claims being allowed hereby to others.

23   In any event, while the decision today may be highly

24   persuasive in the future, the Court cannot deal directly with

25   GFCC's proof of claim, and the parties are free to argue as to

17

1   the effect of this decision on such proof or proofs of claim.

2   The debtors say that they do not want any risk of duplicative

3   liability, but they move for court approval of the stipulation

4   before dealing with the GFCC proofs of claim.  Moreover, the

5   TIA ultimately requires in Section 5(c) that a claim be "paid."

6   Thus, the stipulation should be approved as written with

7   respect to the debtors.

8         With respect to the third parties and GFCC's alleged

9   possible claims against BAE, the indenture trustee, and others,

10  GFCC argues that the Court does not have jurisdiction to bar

11  such claims.  There is nothing in the stipulation that purports

12  to bar any claims or constitute an injunction; and, in view

13  thereof, the provision suggested by GFCC is unnecessary, as

14  well as inappropriate, especially if there were some

15  implication that GFCC might have a claim against any other

16  party to these proceedings for amounts received under the

17  stipulation with the debtors.  The Court cannot conceive on

18  what legal theory there might be such a claim, but will leave

19  the issue to another Court to deal with at another time, if

20  necessary.

21        In sum, the Court will so order the proposed

22  stipulation with regard to the remaining five aircraft, and the

23  debtors should submit an appropriate stipulation for signing.

24        I thank all of the parties for excellent argument and

25  briefs, and I think that concludes the proceedings this

18

1    afternoon.  Thank you very much.

2           COUNSEL:  Thank you for your time.  Thank you.

3           THE COURT:  Good afternoon.

4           COUNSEL:  Thank you.

5           THE COURT:  All right.

6       (Court and court personnel confer.)

7       (Proceedings concluded at 4:02 p.m.)

8                        CERTIFICATION

9           I certify that the foregoing is a correct transcript

10   from the electronic sound recording of the proceedings in the

11   above-entitled matter to the best of my knowledge and ability.

12

13   *[signature: Coleen Rand]*

14   _____        July 28, 2007

15   Coleen Rand, AAERT Cert. No. 341
     Certified Court Transcriptionist

16   Rand Transcript Service, Inc.

17

18

19

20

21

22

23

24

25